UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KLINE ENTERPRISES INC., a California Corporation | |
| Plaintiff, | Case No. 1:11-cv-00535-BLW |
| v. | |
| DOUGLAS SWENSON, an individual; JEREMY SWENSON, an individual; GARY BRINGHURST, an individual; MATTHEW DUCKETT, an individual; . THOMAS VAR REEVE, all individual; DANIEL ORR, an individual; DAVID ROTTMAN, an individual; JOHN MAYERON, an individual; CHARLES E. HASSARD, an individual; THOMAS A KRAUSE, an individual; DAN FALLS, an individual; DBSI TIEGS 979, LLC, an Idaho limited liability company; and JOHN and JANE DOES 1 Through 10, whose true identities are unknown, | MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

Before the Court are motions to dismiss filed by defendants Charles Hassard, Var

Reeve, John Mayeron, Gary Bringhurst, Jeremy Swenson, and David Swenson, and a

motion to extend the time to serve defendant Douglas Swenson filed by plaintiff Kline

Enterprises Inc.  The motions are fully briefed and at issue.  For the reasons explained

below, the Court will (1) grant Kline's motion to extend the time to serve Douglas

Swenson, (2) grant John Mayeron's motion to dismiss due to untimely service, (3) deny

that portion of the motion to dismiss filed by Gary Bringhurst and David Swenson based

on untimely service; (4) deny the motion to dismiss brought by Charles Hassard and Var

Reeve based on Kline's failure to state a claim, (5) deny that portion of the motion to

dismiss brought by David Swenson, Jeremy Swenson, and Gary Bringhurst based on

Kline's failure to state a claim, and (6) deem the denials of the motions to dismiss for

failure to state a claim to be without prejudice to the movants' right to refile the motions

after Kline files an amended complaint.

## FACTUAL BACKGROUND

Plaintiff Kline originally filed this action in Idaho state court and it was removed

here by the defendants on November 3, 2011.  While the case was still in state court, the

deadline imposed by Idaho law for the service of process on the defendants passed

without some of the defendants being served.  All parties agree that Kline failed to serve

defendants John Mayeron, Gary Bringhurst, David Swenson, and Douglas Swenson by

the deadline of October 20, 2011, imposed by Idaho law.  Kline did serve three of these

defendants about ten days after the deadline expired, but has not yet served Douglas

Swenson and seeks additional time to do so.  The Court must determine (1) whether the

Idaho deadline of October 20th applies or whether federal law governs so that Kline gets

an additional 120 days from the date of removal to serve defendants, and (2) if Idaho law

applies, whether Kline has shown good cause under Idaho law for the late service on

three of the defendants and to extend the deadline for service on the fourth.

Kline is a privately held corporation comprised of two family trusts formed to

manage investment properties for the benefit of Joanne Kresse and Patricia Kline.

Defendant DBSI was one of a number of fictitious entities formed by defendant Douglas

Swenson that offered to manage real estate. Along with Swenson, each of the named

individual defendants is a principle of DBSI or its affiliates.

In May 2008, Kline invested funds with DBSI in return for ownership of Idaho

farmland, which DBSI would manage for five years and then buy back. DBSI also

promised to pay Kline a monthly return on its investment.

But shortly this agreement was made, DBSI filed bankruptcy, stopped paying

Kline, and forced Kline to manage the farmland itself. To further complicate matters,

DBSI's bankruptcy trustee initiated an avoidance action to recoup over $60,000 that

DBSI had paid Kline before it filed bankruptcy. Instead of receiving a guaranteed return,

Kline found itself embroiled in unexpected litigation and managing Idaho farm

properties.

On April 20, 2011, Kline filed this action in Idaho State Court. Although Kline

did not have the financial resources to pursue complicated litigation against DBSI, it filed

suit to toll various statute of limitations. Meanwhile, Kline pursued reimbursement of its

investment on two other fronts besides the Idaho state court action, by filing an

arbitration action with the Financial Industry Regulatory Authority (FINRA), and an

adversary proceeding in the DBSI bankruptcy.  Both actions were expensive and drained

Kline's financial resources.  Finally, in December 2011, Kline's finances began to

improve when the FINRA arbitration was settled and a buyer was found for the Idaho

farmland.

In the Idaho state court action, all parties agree that under Idaho law, Kline's

deadline for serving the defendants was October 20, 2011.  Kline did not serve

defendants Gary Bringhurst and John Mayeron until October 31, 2011, and did not serve

David Swenson until November 1, 2011.  To this date, Kline has not served Douglas

Swenson. The case was removed here on November 3, 2011.

## LEGAL STANDARDS

In determining the validity of service in the state court prior to removal, a federal

court must apply the law of the state.  *Lee v. City of Beaumont*, 12 F.3d 933, 936–37 (9th

Cir.1993) (holding that "[t]he issues of the sufficiency of service of process prior to

removal is strictly a state law issue"), overruled on other grounds, *California Dept. of*

*Water Resources v. Powerex Corp*., 533 F.3d 1087, 1091 (9th Cir.2008).

However, once "a case has been removed to federal court, it is settled that federal

rather than state law governs the future course of proceedings . . . ."  *Granny Goose*

*Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 436-37 (1974);  *see also,*

Fed.R.Civ.P. 81(c)(1) (stating that the Federal Rules of Civil Procedure "apply to a civil

action after it is removed from a state court").  Under federal law, plaintiffs have 120

days to perfect service, *see Fed.R.Civ.P. 4(m),* and in a removed case, this 120-day period

begins to run from the date of removal.  *See* 28 U.S.C. §1448*; Wallace v Microsoft Corp.,* 596 F.3d 703 (10th Cir. 2010).

The defendants allege that before this case was removed, the deadline under Idaho law for service of process expired before plaintiff Kline served these defendants.  Kline responds that even if it failed to meet the Idaho state law deadline for service of process, it was entitled to a new 120-period – beginning on the date of removal -- to serve the defendants under Rule 4(m) and §1448.  Kline cites in support the case of *Baumeister v. New Mexico Com'n for the Blind*, 409 F.Supp. 2d 1351 (D.N.M. 2006).  But in that case, there was no time deadline for service under New Mexico law; the plaintiff merely had to use "reasonable diligence" in serving the defendants.  *Id.* at 1354.  Thus the court was not faced there – as this Court is here – with a violation of the state law time deadline for service while the case sat in state court before removal.

Under these circumstances, giving Kline a new 120-day service period beginning on the date of removal would be to hold that defendants, by removing the case, waived any state defenses they would have had in state court.  But that is not the law:  On removal, "the defendant may take advantage of any legitimate defense that would have been available to him or her in state court."  5C, Wright and Miller*, Federal Practice & Procedure* §1395 at p. 558 (3d ed. 2004).  This ensures that "removal cannot breathe life into an expired claim."  *Id.* at §3721 (4th ed. 2009).

These principles appear at first glance to have been affected by an amendment to 28 U.S.C. §1441 that states that a federal court, on removal, is not precluded from

hearing a case just because the state court lacked jurisdiction. *See* 28 U.S.C. §1441(f).

However, this amendment "focused on subject matter jurisdiction rather than personal

jurisdiction *or service of process*." *Id*. at §1075 (emphasis added).[1]  Hence, the

amendment "left unchanged the principle that removal cannot breathe life into an expired

claim." *Id.* at §3721; s*ee also Wallace v Microsoft Corp.*, 596 F.3d 703, 707 (10th Cir.

2010) (stating that if state law service deadline had expired without service being

accomplished, subsequent removal to federal court does not entitle plaintiff to a new 120-

day service period); *Marshall v. Warwick*, 155 F.3d 1027, 1033 (8th Cir.1998) (same).

     In this case, if the defendants had a defense in the Idaho court that Kline failed to

perfect service by the deadline imposed by Idaho law, the defendants have not waived

that defense by removing the case to this Court.  And if this Court finds that while the

case was in the Idaho court, Kline failed to perfect service within the deadline imposed

by Idaho law, the subsequent removal of the case cannot cure that deficiency.  In other

---

[1]  The amendment was designed to fix a problem with the existing law.  Prior to the amendment, a federal court's jurisdiction of a removed action was derivative of the jurisdiction of the state court from which it was removed.  *See Lambert Run Coal Co. v. Baltimore & O.R. Co.,* 258 U.S. 377, 382 (1922) (Brandeis, J.).  This produced an anomalous result when a plaintiff filed an action exclusively within federal jurisdiction in a state court, where it did not belong.  *See* 19A Wright and Miller, *Federal Practice & Procedure (Appendix G – Part III)* at §1441 n. 47 (2011).  If the defendant removed the case to federal court, where it did belong, the district court was obliged to dismiss the case.  *Id.*  Although the plaintiff could then refile the case in federal court, the applicable period of limitations might bar the new suit even though the original suit had been timely commenced, albeit in the wrong court.  *Id.*  Congress responded by amending §1441 to provide that the lack of jurisdiction in the state court did not preclude the federal court from hearing a case over which it had jurisdiction.

**MEMORANDUM DECISION AND ORDER - 6**

words, Kline is not entitled to a new 120-period under federal law if, while the case was in the Idaho court, Kline missed the Idaho deadline for service.

The Court now turns to a discussion of the Idaho law regarding service of process. Idaho Rule of Civil Procedure 4(a)(2) requires that service be accomplished within 6 months of the date the complaint is filed.  If service is not accomplished, and the party "cannot show good cause why such service was not made within the period, the action shall be dismissed." *Id.* Under Idaho law, there is no bright line test for determining if good cause exists. *Harrison v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 177 P.3d 393, 397 (Idaho 2008).  Rather, the analysis of good cause focuses on the "diligent efforts" of the party and "circumstances beyond the plaintiff's control."  *Elliot v. Verska*, 271 P.3d 678, 688 (Id.Sup.Ct. 2012).  Idaho law instructs that certain factors are "irrelevant" to this analysis; these include: pro se status, any applicable time bar, lack of prejudice to defendants, settlement negotiations, defendant's actual knowledge of the litigation, or other pre-litigation proceedings such as a medical pre-litigation screening panel.  *Elliot*, 271 P.3d at 686-87.

Additionally, to determine whether good cause existed, a court must focus its inquiry on the six-months after the case was filed. *Harrison*, 177 P.3d at 397.  Kline has the burden of showing good cause, and the Court must construe the record in the light most favorable to Kline and draw all reasonable inferences in its favor.  *Elliot*, 271 P.3d at 683.

## ANALYSIS

**Service on David Swenson, Gary Bringhurst & John Mayeron**

Defendants David Swenson, Gary Bringhurst and John Mayeron seek dismissal on the ground that Kline failed to serve them by the deadline imposed by Idaho law. Kline responds that it has shown good cause for the late service, but many of the facts that Kline cites are not properly considered under Idaho law.

Kline asserts that if these defendants are dismissed, he may be barred from refiling suit against them because the limitations period has expired. This argument has been rejected, however, by the Idaho Supreme Court. *Sammis v. Magneteck, Inc.*, 941 P.2d 314, 319 (Id,Sup.Ct. 1997) (holding that a "time-bar to refilling the action is not a factor to be considered in determining whether good cause exists").

Kline also asserts that the defendants may have had actual knowledge of the suit, and would suffer little prejudice if the time for service is extended. But these two grounds – actual notice and a lack of prejudice – were expressly rejected as a basis for a finding of good cause in *Campbell v. Reagan*, 159 P.3d 891 (Id.Sup.Ct. 2007).

Kline offers as an excuse its time-consuming involvement in the FINRA arbitration and bankruptcy proceedings. These were certainly major distractions, but they cannot constitute good cause. *See Elliot*, 271 P.3d at 687 (holding that plaintiff's involvement before a pre-litigation screening panel was "irrelevant to good cause," even though it was a mandatory prerequisite of litigation); *Martin*, 987 F.2d at 377 (holding that "settlement negotiations between the parties do not provide justification for delay of service").

With regard to defendant John Mayeron, Kline served him 11 days after the deadline expired on October 20th.  Kline explains that its "dismal financial situation" prevented it from "investing significant funds in trying to locate [Mayeron] right away." *See Kline Response Brief (Dkt. No. 36)* at p. 5.  On October 12th, with the deadline just eight days away, Kline located a Boise address for Mayeron, but it turned out to be the wrong address.  Kline then took another 5 days to find an address in Texas and send the papers to a process server there on October 17th.

Kline asserts that "for reasons beyond Kline's control," the Texas process server did not even attempt to serve Mayeron until October 26th, and did not actually serve him until October 31st.  But Kline's letter to the Texas process server says nothing about the need to serve Mayeron by October 20th, and contains no alert that a deadline will expire in 3 days.  *See Exhibit E (Dkt. No. 38-5).*  Kline does not point the Court to any other portion of the record where it stressed to the Texas process server that service had to be done by October 20th.  Thus, the Texas process server's delays cannot constitute grounds for finding good cause.

Kline argues that "[i]t would be inequitable for Mayeron, a principal of DBSI, to benefit from the financial distress he and others caused Kline."  *Id.* at p. 11.  With this argument, Kline blames the late service on its lack of funds.  But Kline does not dispute that Mayeron's address – where he lived for the entire 6-month service period -- was easily available from various Web services for free.  There is no evidence that Mayeron evaded service or made service difficult.  Thus, even assuming that Kline lacked funds

due to Mayeron's conduct, there is no evidence that the lack of funds prevented Kline from quickly locating and serving Mayeron.

While each excuse offered by Kline does not individually merit a finding of good cause for the late service on Mayeron, the case law directs the Court to consider whether they collectively add up to good cause. They do not. There is nothing about these excuses viewed together that gives them any more strength than when viewed separately. Thus, the Court finds that Mayeron's motion to dismiss should be granted.

There are different circumstances surrounding the service of defendants David Swenson and Gary Bringhurst. Their counsel, Curt McKenzie, represented to Kline's counsel, Ron Shepherd, that he had authority to accept service for them. McKenzie made that representation in an e-mail dated May 26th – about 5 months before the deadline expired. *See Exhibit B (Dkt. No. 38-2).* Shepherd then waited until October 12th – just 8 days before the deadline expired – to send the pleadings to McKenzie along with a form to be signed by McKenzie, Swenson, and Bringhurst to accept service. Under Idaho law, service was not accomplished until those forms were signed.

In his letter to McKenzie, Shepherd states that "[i]f I do not receive the signed Acceptance of Service and Receipts of Service by Friday October 14, 2011, at 5:00 p.m., I will assume you are no longer authorized to accept service and will proceed with service of process of Mr. David Swenson and Mr. Gary Bringhurst." *See Exhibit D (Dkt. No. 38-4).* October 14th came and went, and Shepherd did not hear from McKenzie but took no action to personally serve Swenson and Bringhurst as he had represented he

would.  On October 26, 2011, McKenzie wrote a letter to Shepherd informing him that "I am not authorized to accept service for either of them [Swenson and Bringhurst] so please continue with direct service."  *See Exhibit F (Dkt. No. 38-6)*.  Shepherd served Bringhurst on October 31st, and David Swenson on November 1st.

Shepherd argues that he was enticed to delay service by McKenzie's representation that he would accept service.  He assails McKenzie for sitting on the service papers until after the deadline expired:  "It appears that McKenzie intentionally waited until after October 20, 2011 to [reveal his lack of authority] in order to create an argument for McKenzie's clients that service of process was not timely completed.  This tactic is troubling and should be rejected by the Court . . . ."  *See Kline Response Brief (Dkt. No. 40)* at p. 4.

The Idaho Supreme Court has assumed, without deciding, that good cause exists to extend the service deadline when wrongful enticement to delay service is shown.  *See Campbell*, 159 P.3d at 895.  Relying on McKenzie's representation that he had authority to accept service, Shepherd delivered the service papers to McKenzie about 8 days before the deadline expired, but McKenzie waited until 6 days *after* the deadline to reveal that he lacked authority to accept service.  At first glance, this looks like wrongful enticement.

But this appearance changes when another fact is considered:  On October 12th, Shepherd told McKenzie that if he heard nothing by October 14th, he would assume McKenzie lacked authority to accept service and he would proceed to directly serve Swenson and Bringhurst.  Thus, when McKenzie silently sat on the service papers, he

was entitled to assume that Shepherd would proceed with direct service.  Far from

enticing Shepherd into inactivity, McKenzie's silence was a clear message to Shepherd –

under Shepherd's self-imposed deadline -- that he needed to take immediate action.

Shepherd still had six days to serve the two men, and there is no evidence that they

evaded service or made it more difficult in any way.  It appears that it was Shepherd's

failure to follow through on his representation that he would directly serve the two men –

and not any wrongful enticement by McKenzie – that resulted in the failure to meet the

deadline.

The Court is concerned, however, that this analysis is completely a construct of

the Court, not based on any argument made by McKenzie – in fact, McKenzie never

responded to Shepherd's attack on his ethics.  Shepherd made a very serious charge that

McKenzie intentionally sought to gain an advantage by "fail[ing] to honor his word."

*See Kline Response Brief (Dkt. No. 40)* at p. 5.  McKenzie had an opportunity to file a

reply brief and rebut that charge, but did not do so.

Given the importance of reputation to any attorney, the Court was frankly

astonished that McKenzie filed no reply.  And while McKenzie's lack of response does

not necessarily mean he concedes the point, it raises a question whether there is more

here than meets the eye.  To put the Court's concern in the language of the standard for

reviewing a motion to dismiss, the Court must grant all inferences to Kline, and the

inference from McKenzie's failure to defend himself against serious ethics charges raises

an inference that the Court is missing something when it rushes to McKenzie's aid.

Given these circumstances, the Court refuses to grant McKenzie's motion to dismiss Swenson and Bringhurst on the ground that Shepherd failed to meet the service deadline.

## Motion to Extend Time to Service Defendant Douglas Swenson

To this day, Kline has not served Douglas Swenson.  On March 2, 2012 -- more than 4 months after the October 20th deadline expired -- Kline filed a motion to extend the deadline as to Douglas Swenson.  Kline argues first that the removal triggered a new deadline under federal law giving Kline 120 days from the removal date to serve Douglas Swenson.  The Court has already rejected that argument above.

Kline argues next that it has shown good cause for extending the deadline.  To determine whether good cause exists, the Court is governed by the authorities discussed above, and must therefore review the facts surrounding Kline's attempts to serve Douglas Swenson.

One day after filing the complaint in state court, Kline retained Ron Nelson, a process server, to serve the complaint on the defendants, including Douglas Swenson. Unable to locate Swenson at his place of employment, Nelson went to his residence "on at least four or five occasions" during May of 2011, "all at various times of the day and night and on at least one Saturday."  *See Supplemental Affidavit of Nelson (Dkt. No. 42-1)* at p. 3.  On each visit he "waited for up to two hours looking for any sign of life inside the house."  *Id.*  After these visits, Nelson concluded that "[n]ot at one time did it appear to me that the house was occupied."  *Id.*  In addition, Shepard "personally went to Doug

Swenson's Eagle residence on three separate occasions to try to serve him" but concluded that "it did not appear that anyone was living at the residence full time."  *See Shepherd Affidavit (Dkt. No. 25-3)* at p. 3.  Shepherd also commissioned Jennifer Shepherd to serve Swenson, and she tried on "several occasions" to serve him but failed.

   Kline's affidavits do not record any attempts to actually serve Swenson on any dates in June through the October 20th deadline.  During this time, Shepherd's legal assistant Brenda Seeger would "periodically check Westlaw for any possible updates" on Westlaw's "People Finder" program to locate Swenson.  *See Seeger Affidavit (Dkt. No. 25-5)* at p. 3.  But she found nothing of substance.  Seeger was also checking pending cases in the area because Swenson was involved in an array of litigation at the time.  In "mid-October" she discovered that Swenson might be present for a Debtor's Examination on October 25th – five days after the service deadline – but that hearing was vacated. Seeger discusses attempts at service that occurred after October 20th, but the case law cited above directs the Court to consider only the attempts made during the 6-month period ending on October 20th to determine if good cause exists.

   This record shows that Swenson was absent in May of 2011, and if he was not evading service, he was certainly making it very difficult.  However, while Kline's affidavits show a flurry of attempts to serve Swenson in May of 2011, they fail to identify by date any actual attempts to serve him in the months June through October 20th of 2011.  During those five months, did Nelson, or anyone for that matter, visit

Swenson's home again?  During those five months, did Swenson's home still appear vacant?

These holes in the record prejudice Kline, because it has the burden of showing good cause to obtain an extension of the service deadline.  Moreover, counsel for Douglas Swenson filed his affidavit stating that during the entire six-month service period between April and October, Swenson resided at the home visited by Nelson, and during that time was served with process in other actions.  S*ee Carvalho Affidavit (Dkt. No. 35).*

On the other hand, the affidavits of Nelson and Shepherd depict a home that was vacant and unoccupied.  Nelson visited three or four times – waiting up to 2 hours on each visit – and observed no indication that anyone was living there.   While other process servers may have been able to serve Swenson there, there is evidence that Swenson, intentionally or otherwise, was successfully avoiding Nelson.

This is the tipping point for the Court on a very difficult issue.  While the showing is not robust, there is enough here to infer that Douglas Swenson was taking some evasive maneuvers to avoid service, at least as to Nelson and the Shepherd.  Once the specter of evasion is raised, as it is here, the Court is very reluctant to impose the harsh consequences that follow from a failure to meet a service deadline.  Accordingly, the Court will grant Kline's motion for extension and give Kline an additional 120 days to serve Douglas Swenson.

## Rule 12(b)(6) Issues

In addition to moving to dismiss for lack of service, various defendants have moved to dismiss under Rule 12(b)(6) because Kline's Amended Complaint fails to state a claim for relief.  A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  And the plaintiff must plead facts that, assumed as true, allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.

When fraud is alleged, however, more is required.  *See* Fed.R.Civ.P. 9(b).  Rule 9(b) requires the complaint to "state with particularity the circumstances constituting fraud."  Fed.R.Civ.P. 9(b).  This requires the plaintiff to state "the who, what, when, where, and how of the misconduct charged."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  To meet both standards -- the particularity standard of Rule 9 and the plausibility standard of *Twombly* -- the plaintiff's statement of who, what, where, and when must "raise a reasonable expectation that discovery will reveal evidence of the misconduct alleged"  *Cafasso*, 637 F.3d at 1055.  Thus, when the required particulars are considered, the complaint must still be plausible on its face.  *Id.*

While a court must accept as true all allegations contained in the complaint, it need not consider legal conclusions.  *See Aschroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Additionally, when the alleged misconduct involves multiple defendants, the pleadings

must be specific as to each defendant. *Destifino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). While the complaint need not allege "[p]articipation by each conspirator in every detail" of the fraud, it is not enough for a plaintiff to "lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). To meet this standard, the plaintiff must "differentiate their allegations" for each defendant, and "at a minimum, identify the role each of defendant." *Id.* at 765.

In this case Kline alleges nine counts including: (1) fraud, (2) misappropriation of funds, (3) RICO violations, (4) violation of the Idaho Racketeering Act, and (5) violation of the Idaho Securities Act. While it is clear that common law fraud must meet the Rule 9 standards, many of Kline's other claims must also meet the Rule 9 standard. *See Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 386 (Idaho 2005) (common law fraud must be plead with particularity and include all 9 elements set out in case law); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (RICO claims must meet Rule 9 standard); *Spence v. Howell*, 890 P.2d 714, 725-726 (Idaho 1994) (addressing sufficiency of pleading for Idaho Racketeering Act); *RS-ANB Fund, LP v. KMS SPE LLC*, 2012 WL 1288762, 4:11-cv-00175-BLW (D.Id. April 16, 2012) (addressing need to plead elements of cause under Idaho Securities Act)(slip copy). Even if fraud is not an element of each claim, when a plaintiff alleges a "unified course of fraudulent conduct" for all the claims, all the claims are subject to the Rule 9 standard because all the claims are "grounded in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir 2003).

Kline's counsel concedes that the Amended Complaint fails to meet these standards, and the Court so finds.  While the Amended Complaint alleges fraud generally, it fails to contain the particulars required by the authorities cited above.  Specifically, the Amended Complaint fails to illuminate the role each defendant played in the suspect transaction, and further fails to offer enough detail to allow the Court to infer that each defendant's involvement would be generated in discovery.

At this point, the Court could either dismiss the case or give Kline an opportunity to amend.  Dismissal without leave to amend is not proper, however, unless the Court finds, beyond doubt, that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).  The Court cannot make that finding, and so will grant leave to amend.  Kline is put on notice, however, that only one opportunity is given to meet the standards set forth above.  The motions to dismiss are being denied without prejudice to the rights of the defendants to file new motions if Kline's amendments are insufficient.  If Kline's amendments fail to meet the standards set forth above, and the defendants file a second round of motions of dismiss, Kline will not be given another opportunity to amend and the case will be dismissed.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that defendant Mayeron's motion to dismiss (docket no. 21) is GRANTED and John Mayeron is dismissed as a defendant in this action.

IT IS FURTHER ORDERED, that the motions to dismiss filed by defendants Charles Hassard, and Var Reeve (docket no. 22) and by David Swenson, Jeremy Swenson, and Gary Bringhurst (docket no. 24) are DENIED WITHOUT PREJUDICE to the right of the movants to refile the motions after the plaintiff has filed the amendments directed by this Order.

IT IS FURTHER ORDERED, that the plaintiff shall file a Second Amended Complaint within 14 days from the date of this Order.

IT IS FURTHER ORDERED, that plaintiff's Motion to Extend Time (docket no. 25) is GRANTED and plaintiff has 120 days from the date of this Order to serve Douglas Swenson.

DATED: June 6, 2012

B. Lynn Winmill
Chief Judge
United States District Court