IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KLINE ENTERPRISES, INC., a California corporation,<br><br>       Plaintiff,<br><br>  v.<br><br>DOUGLAS SWENSON, an individual;<br>JEREMY SWENSON, an individual;<br>DAVID SWENSON, an individual;<br>GARY BRINGHURST, an individual;<br>MATTHEW DUCKETT, an individual;<br>THOMAS VAR REEVE, an individual;<br>DANIEL ORR, an individual;<br>DAVID ROTTMAN, an individual;<br>JOHN MAYERON, an individual;<br>CHARLES E. HASSARD, an individual;<br>THOMAS A. KRAUSE, an individual;<br>DAN FALLS, an individual; DBSI TIEGS<br>979, LLC, an Idaho limited liability company;<br>and JOHN and JANE DOES 1 THROUGH 10,<br>whose true identities are unknown,<br><br>       Defendants. | Case No.  1:11-CV-535-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Defendant Thomas Var Reeve has filed a motion to dismiss, alleging that plaintiff Kline Enterprises, Inc. failed to plead its claims with sufficient particularity.  The motion is fully briefed and at issue.  For the reasons explained below, the Court will deny the motion.

## LITIGATION  BACKGROUND

Plaintiff Kline is a privately held corporation comprised of two family trusts formed to manage investment properties for the benefit of Joanne Kresse and Patricia Kline.  Defendant DBSI was one of a number of fictitious entities formed by defendant Douglas Swenson that offered to manage real estate.  Along with Swenson, each of the named individual defendants is a principle of DBSI or its affiliates.

In May 2008, Kline invested funds with DBSI in return for ownership of Idaho farmland, which DBSI would manage for five years and then buy back.  DBSI also promised to pay Kline a monthly return on its investment.  But shortly this agreement was made, DBSI filed bankruptcy, stopped paying Kline, and forced Kline to manage the farmland itself.  To further complicate matters, DBSI's bankruptcy trustee initiated an avoidance action to recoup over $60,000 that DBSI had paid Kline before it filed bankruptcy.  Instead of receiving a guaranteed return, Kline found itself embroiled in unexpected litigation and managing Idaho farm properties.

On April 20, 2011, Kline filed this action against various individuals associated with DBSI, and one of the DBSI entities, DBSI Tiegs 979, LLC.  In the amended complaint, Kline alleged the following causes of action: (1) violations of the Idaho Uniform Security Act; (2) common-law fraud; (3) misappropriation of funds/conversion; (4) violations of RICO; (5) violations of the Idaho Racketeering Act; (6) civil conspiracy; (7) "pierce the corporate veil"; (8) "rescission and restitution"; and (9) "disgorgement."

Some of the defendants filed a motion to dismiss alleging that the amended complaint failed to plead these causes of action with sufficient particularity.  Kline conceded that its amended complaint was insufficient and requested leave to amend.  The Court filed a decision

giving Kline one opportunity to amend his complaint or face dismissal. Kline has now filed a second amended complaint, and defendant Reeve challenges it as lacking the necessary specificity. The Court will analyze that claim after reviewing the governing legal standards.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When fraud is alleged, however, more is required. *See* Fed.R.Civ.P. 9(b). Rule 9(b) requires the complaint to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). This requires the plaintiff to state "the who, what, when, where, and how of

**Memorandum Decision & Order - 3**

the misconduct charged." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 (9th Cir. 2011).  To meet both standards – the particularity standard of Rule 9 and the plausibility standard of *Twombly* – the plaintiff's statement of who, what, where, and when must "raise a reasonable expectation that discovery will reveal evidence of the misconduct alleged." *Cafasso*, 637 F.3d at 1055. Thus, when the required particulars are considered, the complaint must still be plausible on its face.  *Id*.

In this case, Kline's nine counts include five counts that either directly allege fraud or require elements containing fraud:  (1) fraud, (2) misappropriation of funds, (3) RICO violations, (4) violation of the Idaho Racketeering Act, and (5) violation of the Idaho Securities Act.  A charge of fraud must satisfy the Rule 9 standards, *see Jenkins v. Boise Cascade Corp*., 108 P.3d 380, 386 (Id.Sup.Ct. 2005), and most of the other claims must also meet this high standard.  *See Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 541 (9th Cir. 1989) (RICO claims must meet Rule 9 standard); *Mannos v. Moss*, 143 P.3d 927, 935 (Id.Sup.Ct. 2007) (using federal RICO law to interpret Idaho Racketeering Act); *RS-ANB Fund, LP v. KMS SPE LLC*, 2012 WL 1288762 (D.Id. April 16, 2012) (holding that securities fraud must meet Rule 9 standard).  Even if fraud is not an element of each claim, when a plaintiff alleges a "unified course of fraudulent conduct" for all the claims, all the claims are subject to the Rule 9 standard because all the claims are "grounded in fraud." *Vess v. Ciba-Geigy Corp*. USA, 317 F.3d 1097, 1103-04 (9th Cir 2003).  That is the case here, and thus the Court will assume that all of Kline's claims must meet the higher standard of Rule 9.  With that standard in mind, the Court will review the allegations of the second amended complaint.

## ANALYSIS

Memorandum Decision & Order - 4

Kline alleges that Reeve was a board member and equity owner of DBSI and several related entities, and that he was among the group that "primarily controlled the DBSI group." *See Second Amended Complaint (Dkt. No. 52)* at ¶¶ 11, 20.  When DBSI began having cash flow problems in 2004, a group of six principals – including Reeve – began "holding weekly meetings . . . to discuss the cash flow . . . ." *Id*. at ¶ 36.  At those meetings, attended by Reeve, DBSI accountants raised specific concerns about various DBSI business practices.  *Id*. at ¶¶ 37, 38.  One of the primary purposes of these weekly meetings was to "review the dire financial condition of [DBSI] and find ways to present financial statements that disguised such dire conditions to prospective investors, including Kline." *Id*. at ¶ 72.  These six principals – including Reeve – "each provided input and ideas . . . on how to present the DBSI group's financials in such a way as to make the DBSI group appear to be in strong financial condition when in fact the group was severely financially distressed." *Id*. at ¶ 73.  By 2008, Reeve "knew that the DBSI group was in financial crisis . . . and that the DBSI group could not meet its obligation under the Kline transaction." *Id*. at ¶ 64.  At that time, DBSI had invested over $100 million in a "high risk, volatile" technology company called Stellar Companies.  *Id*. at ¶¶ 30, 33.  Reeve served on the boards of both Steller and DBSI.  *Id*. at ¶ 30.  This "investment" was essentially a loan that Reeve knew could never be repaid, yet it was labeled on DBSI's books as "notes payable, thus artificially inflating the net worth of the DBSI group."  *Id*. at ¶ 32.

By 2008, Reeve had been informed by the accounting department "that the financial material in the marketing material was inaccurate; yet [he] ignored the accounting department and allowed, caused, and agreed to distribute such information to Kline and induced Kline to invest in the DBSI group based upon the false information." *Id*.  Kline relied on these

**Memorandum Decision & Order - 5**

misrepresentations in DBSI's marketing materials in investing in DBSI. *Id.* at ¶ 41. The
misrepresentations that Kline relied upon include statements that DBSI's net worth was $105
million and that its payments were "guaranteed." *Id.* at ¶¶ 42-46. The marketing materials were
also misleading, Kline alleges, for failing to disclose DBSI's un-collectable loan of over $100
million to Steller Companies. *Id.*

These allegations contain the detail lacking in Kline's earlier pleadings. The allegations
explain the "who, what, when, where, and how of the misconduct charged." *Cafasso,* 637 F.3d
at 1055. Reeve, along with five other principals of DBSI, conspired to lure investors like Kline
by knowingly hiding DBSI's significant financial weaknesses. These allegations are not only
sufficiently detailed but also pass the plausibility test.

Reeve argues, however, that Kline has lumped him together with the other five principals
of DBSI and failed to explain that role that Reeve himself played, as opposed to that of the other
five principals. When the alleged misconduct involves multiple defendants, the pleadings must
be specific as to each defendant. *See Destifino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).
While the complaint need not allege "[p]articipation by each conspirator in every detail" of the
fraud, it is not enough for a plaintiff to "lump multiple defendants together." *Swartz v. KPMG
LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). To meet this standard, the plaintiff must
"differentiate their allegations" for each defendant, and "at a minimum, identify the role each of
defendant." Id. at 765.

In this case, Kline alleges that Reeve met with the other five principals on a weekly basis,
reviewed financial data together, planned together, and ultimately acted together, as necessary in
a corporate setting, to mislead investors. Fraud in the corporate boardroom is often the product

**Memorandum Decision & Order - 6**

of unified action, and the precise role of each principal is not revealed until minutes are examined, depositions are taken, and discovery is completed.  Working under that handicap, Kline's has described a specific and plausible claim.  That is sufficient at this stage of the proceedings.  Accordingly, the Court will deny the motion to dismiss.[1]

### ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 61) is DENIED.

DATED:  **March 25, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge

---

[1]  Reeve makes some arguments in his Reply Brief that go beyond the arguments he made in this Opening Brief that the second amended complaint is too vague.  *See Reply Brief (Dkt. No. 77)* at pp. 2-3.  Because Kline had no opportunity to respond to those arguments, the Court will not consider them in this decision.

**Memorandum Decision & Order - 7**